**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUL 25 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOSE GONZALEZ-MARTINEZ,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No. 21-292

Agency No.
A092-709-359

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 17, 2023
San Francisco, California

Before: WARDLAW, M. SMITH, and RAYES.[**]

Jose Gonzalez-Martinez, a native and citizen of Mexico, petitions for

review of the Board of Immigration Appeals' (BIA) final order of removal,

which dismissed his appeal of the Immigration Judge's (IJ) denial of his

applications for asylum, withholding of removal, and protection under the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Douglas L. Rayes, United States District Judge for the District of Arizona, sitting by designation.

Convention Against Torture (CAT). Because the parties are familiar with the facts, we do not recount them here except as necessary for context. "Where the BIA conducts its own review of the evidence and law rather than adopting the IJ's decision, 'our review is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted.'" *Reyes v. Lynch*, 842 F.3d 1125, 1140 (9th Cir. 2016) (quoting *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006)). We have jurisdiction under 8 U.S.C. § 1252(a)(1), and we deny review.

1. The agency did not abuse its discretion by concluding that Gonzalez-Martinez's robbery conviction was a particularly serious crime, foreclosing asylum and withholding of removal. *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii); *Bare v. Barr*, 975 F.3d 952, 961 (9th Cir. 2020) (noting that the abuse of discretion standard applies to the BIA's particularly serious crime determination). Where, as here, the petitioner's crime of conviction is not an aggravated felony, the agency applies "a multi-factor test to determine on a case-by-case basis whether a crime is particularly serious." *Bare*, 975 F.3d at 961. The agency considers (1) "the nature of the conviction," (2) "the type of sentence imposed," and (3) "the circumstances and underlying facts of conviction." *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (B.I.A. 2007), *overruled in part on other grounds by Blandino-Medina v. Holder*, 712 F.3d 1338, 1347–48 (9th Cir. 2013). Gonzalez-Martinez argues only that that the agency failed to properly consider the third factor. We disagree. The agency adequately accounted for the circumstances and underlying facts of Gonzalez-Martinez's

2                                                          21-292

conviction—including his role as the getaway driver and the fact that he was not armed—and reasonably concluded that these circumstances did not lessen the severity of the crime. At bottom, Gonzalez-Martinez's arguments go to the weight of the evidence rather than the agency's application of the legal standard, which exceeds the narrow scope of our review. *See Bare*, 975 F.3d at 961 (explaining that we lack jurisdiction over the agency's ultimate particularly serious crime determination, and instead are limited to assessing whether the agency relied on appropriate factors and proper evidence).

2. Substantial evidence supports the agency's conclusion that Gonzalez-Martinez is ineligible for CAT protection because he has not shown a probability that he will be subjected to torture by or with the acquiescence of the Mexican government if removed there. 8 C.F.R. § 1208.16(c)(2); *Konou v. Holder*, 750 F.3d 1120, 1124 (9th Cir. 2014) (observing that the substantial evidence standard applies to CAT protection determinations). As a preliminary matter, we reject Gonzalez-Martinez's contention that the BIA failed to explain its basis for affirming the IJ's denial of CAT relief. The BIA discussed both the IJ's reasons for denying Gonzalez-Martinez CAT protection: he failed to establish (1) a likelihood of future torture in Mexico or (2) that any harm would occur by or with the acquiescence of the Mexican government. The BIA then explained why it found no error with either of the IJ's reasons. The record also belies Gonzalez-Martinez's argument that the agency failed to aggregate his risk of torture from all sources. *See Hernandez v. Garland*, 52 F.4th 757, 772–73

(9th Cir. 2022) (finding that the agency aggregated the risk of torture when it considered the combined probability of all sources of torture). As the BIA recognized, the IJ addressed Gonzalez-Martinez's allegations of harm at the hands of both the Zetas cartel and the police.

On the merits, Gonzalez-Martinez does not challenge the agency's finding that he did not suffer past torture. Indeed, as the agency found, Gonzalez-Martinez's case is distinguishable from *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1185 (9th Cir. 2020), because the petitioner there established that local government officials had acquiesced in a past instance of torture. Further, substantial evidence supports the agency's determination that Gonzalez-Martinez failed to establish a likelihood of future torture in Mexico or that any harm would occur by or with the acquiescence of the Mexican government. Gonzalez-Martinez presented evidence concerning the brutality of the Zetas cartel, in general, but failed to establish a probable future threat against him, in particular. He testified that, after he stopped showing up to work, members of the Zetas cartel started trailing him. But he was unable to link the harassment he later experienced to the Zetas cartel, let alone with the acquiesce or participation of the Mexican police. Gonzalez-Martinez described being chased by a group of people who had gathered on the street outside his window and hearing a gunshot as he fled. But he was unable to identify those people, did not know whether they identified him or whether he was their target, and could not ascertain whether they fired at him. He also described being forcibly handled by

individuals purporting to be the police, but his own testimony suggested that he believed these individuals to be impersonating law enforcement, undermining his allegation that Mexican authorities participated or acquiesced in his mistreatment. Lastly, Gonzalez-Martinez described his arrest by police after reporting that people were trying to kill him. The police ultimately released him in exchange for cash but told him to leave town and to never come back, which Gonzalez-Martinez interpreted as a threat of future harm. Gonzalez-Martinez failed, however, to connect this incident to any threats from the Zetas cartel, and the agency reasonably determined that the police harassment Gonzalez-Martinez experienced did not establish a probability of future torture.

The temporary stay of removal remains in place until the mandate issues. The motion for a stay of removal is otherwise denied.

**PETITION DENIED.**